# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

KENNETH MEADOR, as the Personal
Representative of the Estate of PAULA
MEADOR, and THOMAS MEADOR,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

Civil Action No. 4:22-cv-40024-DJC

## MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON APPLICABILITY OF M.G.L. Ch. 231 § 85K

### I. INTRODUCTION

Defendant, the United States of America, by and through its attorney, Rachael S. Rollins, United States Attorney for the District of Massachusetts, has moved for partial summary judgment on its claim that it is covered by the Massachusetts charitable corporation tort cap statute, M.G.L. ch. 231 § 85K. This memorandum is submitted in support of that motion.

Because the United States is substituted for individual federal employees under a *respondeat superior* theory and the Federal Tort Claims Act's limited waiver of sovereign immunity, and federal courts have consistently interpreted the Act's language to mean that the sovereign is analogous to a private employer rather than an individual employee, the Massachusetts statute applies in this case.[1]

---

[1] The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and § 2401(b), 2671-80 ("FTCA").

## II. BACKGROUND

The relevant facts are limited as this is essentially an issue of law. First, Plaintiff sued the United States alleging that an individual doctor employed by the Gardner Community Health Center ("GCHC") which is located at 175 Connors St, Gardner, Worcester County, Massachusetts, committed malpractice while within the scope of the doctor's employment. *See* Complaint, dkt. #1, ¶¶ 3 & 6 and *passim*. GCHC is a location of Community Health Connections, Inc. ("CHC"), an FTCA-deemed facility within the meaning of 42 U.S.C. § 233(g), headquartered at 326 Nichols Road, Fitchburg, Massachusetts.[2] *Id.*, at ¶ 6; https://chcfhc.org/Our-Story. By statute, the doctor is immune from suit and the United States is the sole federal defendant. *See* 42 U.S.C. §§ 233 and 254b; dkt. # 1.

## III. ARGUMENT

### A. The United States is Immune Except and to the Extent It Has Waived Its Immunity

#### 1. Sovereign Immunity Generally.

The United States may not be sued without its consent under the long-standing doctrine of sovereign immunity. *See, e.g., United States v. Mitchell*, 463 U.S. 206, 212 (1983). Dating back to England in the late thirteenth century, the notion of sovereign immunity derives from the idea that the king could not be sued in his own name in his own courts. *See* Louis L. Jaffe, *Suits Against Governments and Officers: Sovereign Immunity*, 77 Harv. L. Rev. 1 (1963). In the United States,

---

[2] Although Plaintiff has made allegations regarding "Greater Gardner Community Health Center," the legal entity is Community Health Connections, Inc. Since Plaintiff does not dispute that Dr. Houde and CHC are deemed to be federal employees for purposes of the FTCA and 42 U.S.C. § 233, the nomenclature is of no real importance for the issue presented herein.

though the doctrine was met with "doubtful reception" in the country's early history, sovereign immunity nonetheless became established law by at least the mid-19[th] century. *See United States v. Lee*, 106 U.S. 196, 204-06 (1882). The Supreme Court has articulated a variety of justifications for the doctrine. *See Alden v. Maine*, 527 U.S. 706, 715 (protecting the "dignity" of the state); *Lee,* 106 U.S. at 206 (protecting the "very idea of supreme executive power," and ensuring the effective performance of the public duties of the sovereign). Functionally, sovereign immunity is jurisdictional in nature, meaning that a court would lack subject matter jurisdiction if a claimant attempted to sue the United States in the absence of an act of Congress waiving immunity. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).

## 2. Waivers of Immunity are Strictly Construed.

The Supreme Court has articulated any waiver of sovereign immunity must be unequivocally expressed. *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33-34 (1992)(adding that waivers should not be liberally construed). Moreover, any waiver of the United States' sovereign immunity by Congress must be strictly construed. *See id.*; *United States v. Olson*, 546 U.S. 43, 45 (2005). This means that the United States can only be sued if, and to the extent that, it has explicitly waived its immunity through an act of Congress.

For example, in *United States v. Olson*, the Supreme Court reversed Ninth Circuit precedent that permitted, under the FTCA, waivers of sovereign immunity based on local law that would make "state or municipal entities" liable. *See Olson*, 546 U.S. at 45. The statutory language of the FTCA permits waiver only in circumstances that a "private person" would be liable. *Id.* Thus, the court reasoned that the language should be interpreted to "mean what [it] say[s]," and ruled that public entities do not fall within the narrow confines of the waiver. *Id.* Likewise, in this case, the only avenue through which the United States can be sued is as a "private person"

under "like circumstances." 28 U.S.C. § 2674. As will be explained, courts have interpreted "private person" to mean a private employer, meaning that the United States, here, can only be sued as an analogous private employer under similar circumstances.

### B. The FTCA Is a Limited Waiver of the Sovereign's Immunity

#### 1. The FTCA Generally.

Enacted by Congress in 1946, the Federal Tort Claims Act (FTCA) provides a limited waiver of the United States' sovereign immunity, allowing suit against the Government for negligent or wrongful acts or omissions of Government employees acting within the scope of their employment. *See generally* 28 U.S.C. § 2674. Just as an ordinary employer would be liable for the torts of its employees under the doctrine of *respondeat superior*, the FTCA makes the United States liable for certain torts of federal employees, allowing victims to recover damages in accordance with the confines of the Act. *See Indian Towing Co. v. United States,* 350 U.S. 61, 68-69 (1955). Administratively, the FTCA eliminated the burden on Congress of passing private bills on behalf individuals injured by government employees, *United States v. Muniz*, 374 U.S. 150, 154 (1963), and granted federal district courts exclusive jurisdiction over suits that fall within the FTCA's limited waiver of immunity. *See* 28 U.S.C. § 1346(b).

#### 2. The United States Is Liable Only to the Extent a Private Individual Would Be Liable Under the Law of the State Where the Injury Occurred.

Significantly, the FTCA does not create a federal cause of action against the United States; instead, through its limited waiver of sovereign immunity, the FTCA makes the Government liable as a private party under "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see also Pornomo v. United States*, 814 F.3d 681, 687 (4th Cir. 2016) ("The FTCA does not create a new cause of action; rather, it permits the United States to be held liable in tort by providing a limited waiver of sovereign immunity."); *Raplee v. United States*, 842 F.3d 328,

331 (4th Cir. 2016) (explaining that "the FTCA merely waives sovereign immunity to make the United States amenable to a state tort suit").

Section 2674 of the FTCA provides:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.
>
> * * *
>
> With respect to any claim under this chapter, the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim, as well as any other defenses to which the United States is entitled.

28 U.S.C. § 2674.

Because the United States is liable as a "private individual under like circumstances," the United States is also entitled to "assert any defense" available to that private individual *and* any other defenses to which it is entitled. *Id.* Courts have consistently interpreted this to give the United States the benefit of a variety of state statutes, including statutory liability caps. *See, e.g., Reilly v. United States*, 863 F.2d 149, 162 (1st Cir. 1988) (giving the Government the benefit of a Rhode Island statute allowing a health care provider, for which the United States was substituted, to reduce its liability based on payments from collateral sources); *Haceesa v. United States*, 309 F.3d 722, 728-30 (10th Cir. 2002) (allowing the Government the benefit of a $600,000 state medical malpractice cap that would be available to a private health care provider for which the United States was substituted).

### 3. "Private Individual" Means a Private Employer or Corporation, Not a Private Individual Person.

The court should find that the FTCA's "private individual under like circumstances" clause refers to a private employer or corporation because the liability of the United States in FTCA cases is grounded in the doctrine of *respondeat superior*. *See Haceesa v. United States*, 309 F.3d 722, 728-30 (10th Cir. 2002); *Lomando v. United States*, 667 F.3d 363, 373 (3d Cir. 2011). A majority of courts to rule on the issue have held that the "private individual" for which the United States is substituted refers to a private employer rather than the individual employee. *See, e.g., Haceesa*, 309 F.3d at 728-30; *Lomando*, 667 F.3d at 373; *see also* note 6 *infra*. Thus, liability against the United States in FTCA cases operates under principles of *respondeat superior* in the same way that an ordinary tort plaintiff would bring suit against an ordinary employer. *See, e.g., Haceesa*, 309 F.3d at 728-30.

The Supreme Court has described the United States' role under the FTCA as equivalent to that of an employer facing *respondeat superior* liability. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420 (1995). The Supreme Court explained that "[g]enerally, such cases unfold much as cases do against other employers who concede *respondeat superior* liability," *id.*, and that the United States, by certifying a case under the FTCA, "expos[es] itself to liability as would any other employer at common law who admits that an employee acted within the scope of his employment." *Id.* at 427.[3] This language is consistent with a majority of circuit courts that have explicitly ruled on the issue.

---

[3] Certification is not required if the United States is sued in its own name. But when a plaintiff sues individual employees, the United States must certify that the employees were acting within the scope of their employments. 42 U.S.C. § 233. If it does so, the United States is substituted as the sole defendant as a matter of law. Plaintiffs may challenge the scope of employment determination but not whether the United States is substituted for employees who are found to have acted within the scope of their employment. 28 U.S.C. 1346(b); 42 U.S.C. § 233;

For example, in *Haceesa v. United States*, a case involving the alleged malpractice of a hospital administrator and nurse at a federally funded hospital for failing to diagnose a rare hantavirus, the Tenth Circuit ruled that the Government's liability under the FTCA is limited to that of a private *employer* under like circumstances. 309 F.3d 722, 729 (10th Cir. 2002). In interpreting the "private individual" clause, the court first began with the language of 28 U.S.C. § 1346(b), explaining that it "unmistakably is couched in the language of an employer's *respondeat superior* liability, creating jurisdiction over actions 'against the United States…for injury…caused by the…wrongful act…of any employee…while acting within the scope of his office or employment.'" *Id.* at 728 (quoting 28 U.S.C. § 1346(b)). In support of this textual analysis, the court further cites the legislative history of the Federal Employees Liability Reform and Tort Compensation Act of 1988: "Congress found that '[t]he United States, through the Federal Tort Claims Act, is responsible to injured persons for the common law torts of its employees in the same manner in which the common law historically has recognized the responsibility of an employer for torts committed by its employees within the scope of their employment.'" *Id.* (citation omitted).

Similarly, in *Lomando v. United States*, the Third Circuit explicitly held that "the FTCA provides that the United States will be liable to the extent that a *private employer* would be liable in similar circumstances in the same locality." 667 F.3d at 374 (emphasis added). The court found relevant that the language of the FTCA "shadows" the language of *respondeat superior* liability by holding the United States liable for the negligence of "any *employee* of the Government *while acting within the scope of his office or employment." Id.* Such language created "a remedial

_____

see generally, e.g., Kasparian v. United States, No. 16-CV-11551-ADB, 2017 WL 1843690, at n.2 (D. Mass. May 8, 2017)(FTCA is the exclusive remedy for any action against an employee of the Public Health Service who acts within the scope of his or her office or employment).

scheme under which the United States would be liable as an employer in like circumstances." *Id;*
*see also Wood v. United States*, 995 F.2d 1122, 1125 (1st Cir. 1993) ("[t]he waiver enables tort
plaintiffs to bring [suit] against a special employer, namely the federal government…and… the
employer is liable under the doctrine of *respondeat superior.*"); *Johnson v. Sawyer*, 47 F.3d 716,
730 (5th Cir. 1995) ("All FTCA liability is *respondeat superior* liability."); *Bryant v. United
States,* 126 F. Supp. 2d 1227, 1234 (D. Ariz. 2000) ("the United States stands in the shoes of the
private employer of a tortfeasor, not in the shoes of the private tortfeasor.").

The only case to hold otherwise is *Knowles v. United States*, 91 F.3d 1147, 1150 (8th Cir.
1996). There, the court held that under the FTCA, the United States is substituted directly for the
individual tortfeasor employee, rather than for an analogous employer. *Id.* The *Knowles* court
reasoned as follows:

> Under the FTCA, the United States will be held liable to the same
> extent as a private party. It is standing in the shoes of the medical
> service specialists. Therefore, the United States shares in the
> protection of the statute to the same extent the individuals would if
> they were sued directly. It follows, then, that if medical services
> specialists, individually, are not protected by the statute, neither is
> the United States shielded from the consequences of their
> negligence.

*Id.* (internal quotation marks and alterations omitted).

This reasoning is flawed for a number of reasons. First, as the dissent points out, the
Government cannot stand in the shoes of the individual employee because the individual
employee, through the mechanics of the FTCA, is immune from suit. *Id.* at 1154. Once the United
States has been substituted as defendant, there simply are no individual federal persons remaining
as defendants. In other words, if the United States took the place of individual employee, it would
be put in the position of someone that cannot be sued, defeating the purpose of the FTCA's limited
waiver. Second, as the *Haceesa* court states, the *Knowles* majority "made no effort to come to

grips with the language of § 1346(b), which…supports the view that [the] FTCA constitutes *respondeat superior* liability." 309 F.3d at 729. Finally, given that any waiver of sovereign immunity "must be construed strictly in favor of the sovereign and not enlarged beyond what its language requires," *Nordic Vill. Inc.*, 503 U.S. at 34, the reasoning of the *Knowles* court unnecessarily reaches beyond the plain language of *respondeat superior* found in the FTCA.

In fact, in a case just five years after *Knowles,* the Eighth Circuit used language that directly refuted the *Knowles* majority. In *St. John v. United States*, the court states the following:

> The FTCA is a limited waiver of sovereign immunity, allowing the federal government to be sued for the actions of "any employee of the Government while acting within the scope of his office or employment" under circumstances where the United States would be liable if it were a private *employer*.

240 F.3d 671, 676 (8th Cir. 2001) (emphasis added). Though the opinion does not cite *Knowles* and does not discuss the employer/employee issue, the court's language is clear in its treatment of the United States under the FTCA: the United States is analogous to a private employer. *Id.*

Given the above precedent, this Court should find that the United States, under *respondeat superior* principles, is liable in the manner of a private employer rather than an individual tortfeasor-employee and can therefore avail itself of all defenses that a private employer can assert under the law of the place where the injury occurred – in this case, Massachusetts.[4]

### C. There are no Individual Federal Defendants Because the United States Is the Sole Defendant

Congress has, on at least two occasions as is relevant here, expressed its clear intent that individual federal employees cannot be held liable for acts taken within the scope of their federal

---

[4] The FTCA states that the United States shall be liable as a private person would be in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b); *McCloskey v. Mueller*, 446 F.3d 262, 266 (1st Cir. 2006).

employment. First, the Federal Employees Liability Reform and Tort Compensation Act of 1988 amended the FTCA and granted federal employees absolute immunity from common-law tort claims arising out of acts taken within the scope of an individual's employment. *See Olivera-Pagan v. Manati Med. Ctr.*, 139 F. Supp. 3d 530, 534 (D.P.R. 2015). Functionally, this means, "the employee is dismissed from the action, and the United States is substituted as the defendant." *Id*. The purpose of this immunity was both to "assure[] that victims of common law torts of Federal employees…be fairly compensated," and "provide[] a needed measure of employee protection from personal liability." 134 CONG. REC. 29931, 29933 (1988).

Second, as regards a particular subset of federal employees, in 1992 the Federally Supported Health Centers Assistance Act (FSHCAA) was enacted to provide "innovative and effective support to community health centers to serve those who depend on them for access to basic health care." 138 CONG. REC. 34269 (1992). Specifically, the FSHCAA recognized federally-funded health centers (and their employees) as employees of the Public Health Service, a federal agency, and made them immune to suit under the FTCA for torts committed within the scope of employment. *See Olivera-Pagan.*, 139 F. Supp. 3d at 534. This reinforces that the liability of the United States is under a *respondeat superior* basis. *See, e.g.*, 42 U.S.C. § 233 (mandating substitution of the United States for individual employees).

CHC and its employees are deemed federal employees of the Public Health Service, 42 U.S.C. § 254b, and, as such, they are immune from suit. See 42 U.S.C. § 233 (providing that for actions alleging negligence by an employee of the Public Health Service, a "remedy against the United States" under the FTCA shall be "exclusive of any other civil action or proceeding"). Courts within the First Circuit have ruled that federally supported health center employees are immune from suit under this statute, and indeed, the government has previously stood in the shoes

of community health center doctors in multiple prior medical malpractice cases. *See Olivera-Pagan.*, 139 F. Supp. 3d at 534; *Gonzalez v. United States*, 284 F.3d 281, 286 (1st Cir. 2002); *Quezada v. United States*, NO. 09-11002-PBS, 2009 WL 10729735, at *1 (D. Mass. Nov. 16, 2009).

In *Olivera-Pagan v. Manati Medical Center*, the court found that Ciales Primary Health Care Services (CHC) was a federally-funded health center and that the FTCA covered the health center as well as the individual doctor. *Olivera-Pagan*, 139 F. Supp. 3d at 534. The court explained that the FSHCAA covers "federally supported health centers, their employees, and certain contractors deemed to be employees of the Public Health Service." *Id.* Because the doctor was an obstetrician and was "provid[ing] labor and delivery services" at the time of the incident, the court found he was acting in the scope of his employment and was thus covered under the FTCA. *Id.* at 535. As a qualifying health-center whose doctor was engaged in the primary care and treatment of the Plaintiff's wife, CHC is similarly immune. *See, e.g.,* Complaint, ¶ 12. In assuming liability for actions against CHC and its employee, the United States did not expand its waiver of sovereign immunity under the FTCA. Rather, traditional FTCA principles apply, and the Government may assert any state law defense available to CHC under principles of *respondeat superior*.

### D. The Massachusetts Charitable Liability Cap Applies

#### 1. The Massachusetts Charitable Immunity and Charitable Liability Cap Statute Generally.

Massachusetts initially adopted the doctrine of charitable immunity in 1876. *See McDonald v. Mass. Gen. Hosp.*, 120 Mass. 432, 432 (Mass. 1876). In *McDonald v. Massachusetts General Hospital,* the court held that defendant Massachusetts General Hospital, a charity, was not liable for the negligence of an agent of the hospital. *Id.* Discussing *McDonald*, the court in

*English v. New England Medical Center* explained that because "the hospital held its funds in trust for the benefit of the public…it would be an unlawful diversion of those funds to apply them to the satisfaction of a judgement based on the negligence of hospital agents." 541 N.E.2d 329, 330 (Mass. 1989). In other words, the charitable immunity doctrine allowed Mass. General to devote its funding to "a great public purpose, that of administering to the comfort of the sick." *McDonald*, 120 Mass. at 435. For a century following *McDonald*, Massachusetts courts followed the charitable immunity doctrine and allowed various charitable organizations to advance their charitable purposes without the burden of tort liability. *See, e.g.*, *Boxer v. Boston Symphony Orchestra*, 174 N.E.2d 363, 364 (Mass. 1961) (applying the charitable immunity doctrine to the symphony orchestra, so that it could advance its charitable purpose of promoting "public appreciation of music…."); *Carpenter v. Young Men's Christian Ass'n*, 86 N.E.2d 634, 637 (Mass. 1949) (applying the doctrine to the YMCA to advance its purpose of "the improvement and elevation of young men….").

In 1971, Massachusetts modified the charitable immunity doctrine by passing M.G.L. ch. 231 § 85K, which limited the liability of charitable institutions to $20,000. Though it does not provide complete immunity to charitable organizations, M.G.L. ch. 231 § 85K nonetheless sought to "protect the funds of charitable institutions so they may be devoted to charitable purposes." *English*, 541 N.E.2d at 333. The statute was amended in 2012 to raise the recovery cap in the medical malpractice context to $100,000. MASS. GEN. LAWS ch. 231 § 85K (2012).

Massachusetts General Law chapter 231 section 85K states:

> It shall not constitute a defense to any cause of action based on tort brought against a corporation, trustees of a trust, or members of an association that said corporation, trust, or association is or at the time the cause of action arose was a charity; provided, that if the tort was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corporation, trust, or

> association, liability in any such cause of action shall not exceed the
> sum of twenty thousand dollars exclusive of interest and costs; and
> provided further, that in the context of medical malpractice claims
> against a nonprofit organization providing health care, such cause of
> action shall not exceed the sum of $100,000, exclusive of interest
> and costs.

MASS GEN. LAWS ch. 231, § 85K.

To benefit from this liability cap, Massachusetts courts have indicated that an organization must show (1) that it is a charity, and (2) that any injury that it may be responsible for under principles of tort law occurred in the course of an activity designed to accomplish in a direct manner its charitable purposes. *See Connors v. Northeast Hosp. Corp.*, 789 N.E.2d 129, 135 (Mass. 2003); *Rivera v. Univ. of Mass. Mem. Healthcare*, No. 90399, 2005 Mass. Super. Lexis 471, at *7 (Mass. Super. Sept. 16, 2005). An organization qualifies as charitable when it is incorporated or organized as a charity and when its work primarily serves the "public good" rather than the organization's "members or a limited class of persons." *Connors*, 789 N.E.2d at 133. Massachusetts courts have recognized the "promotion of health," *Id.* at 135, and the advancing of "medicine, surgery, nursing, and health" as charitable purposes. *Rivera*, Mass. Super. Lexis 471 at *7.

### 2. CHC and Most Major Massachusetts Hospitals Are Charitable Corporations.

Massachusetts courts have recognized hospitals as charitable institutions since the 19th century. *See McDonald*, 120 Mass. at 432. In *McDonald*, the Supreme Judicial Court of Massachusetts ruled that the defendant hospital, "conducting its affairs for the purpose of administering to the comfort of the sick," was a charitable institution. *Id.* Today, all major Massachusetts hospitals are organized as charitable institutions. *See, e.g.*, Restated Articles of Organization, Beth Israel Deaconess Medical Center, https://corp.sec.state.ma.us/CorpWeb/C

orpSearch/CorpSearchViewPDF.aspx ("The corporation is organized and shall be operated exclusively for charitable…purposes…."). Further, the charitable status of such hospitals has not been a point of issue in litigation in situations where a hospital has asserted the charitable tort liability cap. *See Keene*, 786 N.E.2d at 837 ("It was undisputed that the defendant is a charitable corporation….").

CHC was organized as a Massachusetts charitable corporation and remains in good standing as such. Articles of Organization, Community Health Connections, Inc. (stating that the corporation was formed for "educational, charitable, religious or literary purposes ."), attached hereto as Exhibit A. Further, CHC's stated mission is "Our mission is to provide high quality, affordable healthcare in our community" and "providing medical services to the underserved." *About,* Community Health Connections, https://chcfhc.org/Our-Story. As such, it would come within M.G.L. ch. 231 § 85K. If it was sued in its own right and the United States did not substitute itself as defendant, CHC would be able to take advantage of the statutory cap on damages. *See, e.g., Connors v. Northeast Hosp. Corp.*, 789 N.E.2d 129, 135 (Mass. 2003); *Rivera v. Univ. of Mass. Mem. Healthcare*, No. 90399, 2005 Mass. Super. Lexis 471, at *7 (Mass. Super. Sept. 16, 2005).[5] For the reasons that follow, this means that the United States can also use the statute.

### 3. The United States Is Most Reasonably Analogous to a Federal Health Center and Can Assert the Cap in M.G.L ch. 231 § 85K.

_____

[5] There is no question that, at the time of the alleged tort, the doctor as to whom Plaintiff has alleged negligence was engaged in activities designed to accomplish CHC's charitable purposes. *See Connors*, 789 N.E.2d at 135; *Rivera*, 2005 Mass. Super. Lexis 471, at *7. The Complaint states that the doctor was providing primary care to Plaintiff's wife. Dkt. # 1. The alleged tort occurred during the course of this treatment. Pl.'s Compl. *passim.* Care and treatment of patients falls within the health center's mission to "provide high quality, affordable healthcare in our community." *About,* Community Health Connections,https://chcfhc.org/Our-Story.

Given the majority of courts' view that the "private individual" provision refers to a private employer, together with the fact that CHC is a charitable corporation, this court should find that the United States is most reasonably analogous to a non-profit health center which would benefit from M.G.L. ch. 231 § 85K. *See Haceesa*, 309 F.3d at 728-30; *Reilly*, 863 F.2d at 162; *Starns v. United States*, 923 F.2d 34, 37 (4th Cir. 1991); *Dupont*, 197 F.3d at 685-86; *Bryant,* 126 F. Supp. 2d at 1234. When determining the private employer to which the United States should be analogized under the "like circumstances" provision, courts acknowledge that the government can never be exactly like a private actor, but that courts should look for the analogy that is "most reasonable." *See Bryant,* 126 F. Supp. 2d at 1236.

First, the doctor as to whom Plaintiff alleges negligent acts was employed by CHC at the time of the alleged malpractice. Pl.'s Compl., ¶ 12. Second, as explained above, CHC is a MA charitable corporation. Articles of Organization, Community Health Connections, Inc. Thus, if CHC was sued for the alleged torts of one its doctors occurring during the scope of employment, it would be able to assert M.G.L ch. 231 § 85K. Third, because the "private individual" for whom the United States is substituted is really a private employer, the United States, here, must stand in the shoes of a reasonably analogous employer of a federally funded doctor. It is logical, then, that because the alleged malpractice involves acts by an employee of a charitable health center within the scope of her employment, the United States is most reasonably analogous to a charitable health center and should thus benefit from the charitable liability cap.

### E. Multiple Jurisdictions Have Recognized that the United States Must Get the Benefit of Favorable State Statutes

#### 1. The First Circuit Has Held That the United States Can Take Advantage of State Statutes.

In *Reilly v. United States*, the First Circuit held that the United States could take advantage of a Rhode Island law allowing health care providers to offset payments made by collateral sources from damages owed against them. 863 F.2d at 161-63. The case involved malpractice on the part of a doctor at Newport Naval Hospital during the delivery of an infant, causing the baby to be born with significant brain damage. *Id.* at 153. After the United States was substituted as sole defendant under the FTCA and liability was conceded, the government sought to reduce the award against it by the amounts paid toward the infant's care from three federal programs, a reduction available to health care providers pursuant to R.I Gen. Laws § 9-19-34. *Id.* at 161-62. The First Circuit rejected the district court's conclusion that the Government is not an "enumerated entity under the state law," and explained, to the contrary, that the United States stood in the shoes of a similarly-situated health care provider and was thus eligible for the same reduction in damages that a "hospital, clinic, [or] health maintenance organization" would receive under the statute. *Id.* The logic of the First Circuit in this opinion applies with equal force to the Massachusetts charitable corporation liability cap.

#### 2. Other Jurisdictions Have Held That State Liability Caps Apply under the FTCA.

Although the applicability of the Massachusetts charitable corporation tort limit statute to the federal government has apparently not been determined by this district, numerous other federal courts have held that the United States can avail itself of a state statute that limits the amount a tort plaintiff may recover, whether the limit is a statutory cap on tort recovery, or by offsets for collateral amounts payable by other entities, or by a requirement that a state worker's

compensation statute is the only avenue for recovery.[6] *See, e.g., Reilly*, 863 F.2d at 162; *Starns,* 923 F.2d at 37; *Dupont v. United States*, 197 F.3d 678, 685-86 (D.N.J. 2016); *Bryant,* 126 F. Supp. 2d at 1234. These courts reason that because the United States is liable as a "private individual under like circumstances" and "the law of the place where the act or omission occurred" is controlling, the United States, as the substituted defendant, should have the benefit of any state laws that private parties would receive, including liability caps. *See Reilly*, 863 F.2d at 162; *Starns,* 923 F.2d at 37; *Dupont*, 197 F.3d at 685-86; *Bryant,* 126 F. Supp. 2d at 1234.

### 3. Medical Malpractice and Charitable Liability Caps Apply to the United States.

Federal courts have consistently applied state medical malpractice caps to the United States, *see Starns*, 923 F.2d at 37; *Bryant*, 126 F. Supp. 2d at 1235-36, and, in the Third Circuit, courts have applied a state charitable immunity act to the Government. *See Lomando*, 667 F.3d at 378-79; *Dupont v. United States*, 197 F.3d 678, 686 (D.N.J. 2016).

For example, in *Starns v. United States*, a case notably similar to this one, the court applied a Virginia $750,000 medical malpractice liability cap to the federal government. 923 F.2d at 37. The case involved malpractice on the part of the doctors at DeWitt Army Community Hospital, a health care facility operated by the federal government. *Id*. at 35. The doctors failed to diagnose

---

[6] In addition to *Reilly, Starns, Dupont, and Bryant, see also*: *Taylor v. U.S.*, 821 F.2d 1428, 1431 (9th Cir. 1987)(statutory cap applied to U.S.); *Lucas v. U.S.*, 807 F.2d414, 417 (5th Cir. 1986)(same); *Holtshousesr v. U. S.*, 2013 WL 1332424 (D. Mt.)(statutory cap applies); *Tivoli v. U.S.*, 1997 WL 1047860 (S.D.N.Y. 1997)(statutory cap applied); *Carter v. U.S.*, 768 F.Supp.670 (N.D. In. 1991)(same); *Purbaugh by Purbaugh v. U.S.*, 2007 WL 9813294 (W.D. Pa.)(same); *Roth v. U.S.*, 2017 WL 10504584 (D.S.C.)(same); *Moss v. U.S.*, 2021 WL 5240887 (N.D.W.V.)(same); *Hyssell v. Raleigh Gen. Hosp. and U.S.*; 2020 WL3130423 (S.D.W.V.)(same); *Wilson v. U.S.*, 375 F.Supp. 2d 467 (E.D.Va. 2005)(same); and *Landon v. U.S.*, 2019 WL 5197550 (E.D.Va.)(worker's compensation is exclusive remedy); *Scheib v. Fla. Sanitarium & Benevolent Ass'n., et al.*, 759 F.2d 859, 863-64 (11th Cir. 1985)(collateral source statute applied in FTCA action); *Salzwedel v. U.S.*, 2018 WL 460892 (D. Ariz.)(collateral sources).

Jeffrey Starns' intracranial hemorrhage at the time of his birth, causing him to die from intercranial bleeding three days later. *Id*. Applying the relevant FTCA provision, the court ruled that because private health providers in Virginia would in "like circumstances" be entitled to the benefit of the liability cap, the federally-operated hospital was also entitled to the cap. *Id*. at 37.

Similarly, in *Bryant v. United States*, the court ruled that the government could benefit from a medical malpractice liability cap statute, the New Mexico Medical Malpractice Act (NMMMA), when it stood in the shoes of three health professionals. 126 F. Supp. 2d at 1235-36. The case involved alleged malpractice on the part of a dentist, a pharmacist, and a hospital administrator resulting in irreversible brain damage to the plaintiff following wisdom teeth extraction. *Id*. at 1229. At the time of the incident, the dentist, pharmacist, and administrator were all federal employees for the purposes of the FTCA, and the United States was substituted as the sole defendant, (just as in this case). *Id*. Significantly, the government conceded that dentists, pharmacists and hospital administrators were not included in the statutory definition of "health care provider," meaning that the three individual tortfeasors would not get the benefit of the liability cap if the government had not been substituted in their place. *Id*. However, because "the United States stands in the shoes of the private *employer* of a tortfeasor, not in the shoes of the private tortfeasor," the court treated the government as an analogous private employer, namely a hospital, to give the government the same benefit of the liability cap that a health care provider-hospital would get. *Id*.(emphasis supplied); *see also Haceesa v. United States*, 309 F.3d 722, 727 (applying the NMMMA cap to the government in a case against a nurse and a hospital administrator).

Most significantly for our purposes, the court in *Lomando* held that the New Jersey Charitable Immunity Act (NJCIA) applied to the United States in a case where the Government

stood in the shoes of a free non-profit health center.  667 F.3d at 378-79.  First, as explained above, the court reasoned that the language of the FTCA puts the United States in the position of a similarly placed private employer; in this case, in the place of a non-profit health center.  *Id.* at 374.  Second, the court determined that non-profit health centers fall under the protection of the NJCIA under New Jersey law, much like CHC would get the benefit of M.G.L ch. 231 § 85K under Massachusetts law, if sued independently.  *Id.* at 376.  Thus, the Third Circuit held that the United States, taking the place of a non-profit health center, should also get the benefit of the NJCIA.  *Id.* at 378-79.  The court emphasized that such a holding was consistent with Congress' objectives in enacting the FTCA.  *Id.*  "Congress recognized that the required substitution of the United States as the defendant in tort suits filed against Government employees would sometimes foreclose a tort plaintiff's recovery altogether," and so, presumably, application of a state statute which limits, but does not preclude, liability is therefore well within Congressional intent in this arena.  *Id.* at 378 (citation omitted).

Following *Lomando,* in *Dupont v. United States*, another federal district court held that the United States could avail itself of a statute limiting the amount of tort recovery where the United States stood in the shoes of a federally-funded community health center.  197 F.3d at 686.  The law on this issue, in the court's view, "[was] long-settled."  *Id.*  The United States was entitled to the benefit of any defenses available to a similarly-placed private employer, and could thus benefit from the tort recovery statute.  *Id.*  Though the court denied the government's motion for summary judgment, it did so due to uncertainty about whether the health center at issue met the New Jersey statutory definition of "nonprofit hospital."  *Id.* at 690-91.

Yet, even when the United States has taken the place of an employer who could not be afforded the benefit of a statutory cap, courts have nonetheless granted the benefit to the United

States if it would be available to other similarly situated employers. *See Est. of Boone v. United States*, 591 F.Supp.2d 800, 803-04 (D. Md. 2008). In *Boone*, the district court ruled that the United States could benefit from Maryland's statutory damages cap in actions against fire companies, even though the United States was taking the place of a government-controlled fire company which would not meet the statutory requirements for the cap. *Id.* The court reasoned that even if a government-controlled fire company could not benefit from the cap, its private and non-profit counterparts could, and the FTCA therefore granted these benefits to the United States. *Id.*

Here, the United States' case is simpler: CHC, community health centers in Massachusetts and all major Boston hospitals qualify as charitable corporations under Massachusetts law. *See, e.g.,* Articles of Organization, Greater Lawrence Family Health Center (stating that the corporation was formed for "the development and operation of a non-profit community health center exclusively for charitable…purposes.").[7] Accordingly, the United States should benefit from M.G.L ch. 231 § 85K.

### 4. Courts Applying Collateral Source and Workers Compensation Statutes Have Used the Same Rationale.

Federal courts have used the "like circumstances" provision to apply collateral source and workers compensations statutes to the United States. *See, e.g., Thomas v. Calavar Corp.*, 679 F.2d 416, 418-19 (5th Cir. 1982).

For example, in *Thomas v. Calavar Corp.*, the court applied the Louisiana Workmen's Compensation Law to the United States when the employee of a government subcontractor was injured while working to convert a salt cavern to a crude oil storage site. 679 F.2d at 418-19. The court reasoned as follows:

---

[7] *See* https://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSearchViewPDF.aspx.

The FTCA permits recovery in tort against the United States only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." Under the law of Louisiana, the place where the alleged act or omission occurred, the principal for whom a contractor is performing work is not liable in tort for negligent injuries suffered by the contractor's employees if the work is part of the principal's "trade, business, or occupation." In those circumstances, the principal, as the "statutory employer" of the injured employees, is liable to them only under Louisiana's Workmen's Compensation Law. This rule applies also to the United States; when it is under the facts deemed the statutory employer of a contractor's employees, it gains the same immunity from suit in tort that is enjoyed by employers generally.

*Id.* (citation omitted). Finding that the United States was, in fact, the statutory employer, the court ruled that the Government should get the same benefit of the workers compensation statute that a private employer would receive. *Id.* at 419-20.

Similarly, in *Rivera-Lopez v. Action Servs. Corp.*, the court ruled that the United States was entitled to the same immunity provided to a private employer under the Puerto Rico Workmen's Accident Compensation Act (PRWACA); 914 F. Supp. 17, 20 (D.P.R. 1996). The case involved an employee of the U.S. Customs Service Administration who was injured in an accident at a Customs Services facility and claimed that the injury was due to the negligence of Action Services Corp. (Action), the company in charge of providing maintenance to the facility. *Id.* at 18. Action then filed a third-party complaint against the government, claiming the injury was due to the conditions and physical defects of the facility's building. *Id.* Interpreting PRWACA in the context of the FTCA, the court held:

[U]nder Puerto Rico law, a private employer insured under the PRWACA is clearly immune from third-party claims that result from an accident covered by the Act. Pursuant to the FTCA, the USA is entitled to claim the same immunity provided to the private employer under PRWACA. In this instance, then, the third-party claim filed by Action and Cigna against the USA is clearly barred.

*Id.*

### 5. The rationale of the Massachusetts Charitable Cap applies to the United States.

The protection offered to community health centers and their employees under the FSHCAA allowed health centers to "free[] up" millions of dollars spent each year on malpractice insurance and redirect that money to provide more expansive and higher quality care to communities in need. 138 CONG. REC. 34269 (1992). The Massachusetts charitable liability cap's purpose of "protect[ing] the funds of charitable institutions so they may be devoted to charitable purposes" works to further the same end – i.e., to ensure that federal funds go to providing health care to under-served communities and are not diverted by unlimited tort recoveries. *See, e.g., English*, 541 N.E.2d at 333. Community Health Connections, along with its Gardner Health Center, provides numerous essential health services to lower income communities in North Central Massachusetts, including Fitchburg, Gardner and 32 other towns west of Boston. *See generally* Community Health Connections, *see* https://chcfhc.org/Our-Story ("Founded on February 25, 2002, we have 20 years of experience as a Federally Qualified Health Center (FQHC) serving low income, underinsured, uninsured, publicly housed, and homeless populations in 35 cities and towns in North Central Massachusetts"). The application of the charitable liability cap to the United States will allow the federal government to continue to provide adequate funding for these critical health-care services and ensure high-quality care to an otherwise underserved population.

## CONCLUSION

For the foregoing reasons, the court should grant Defendant United States' Partial Motion for Summary Judgment on the applicability of the Massachusetts charitable liability cap to the United States, limiting Plaintiff's recovery to no more than $100,000.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

Date: October 3, 2022

By:    */s/ Thomas E. Kanwit*
Thomas E. Kanwit
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3271
thomas.kanwit@usdoj.gov

## LOCAL RULE 7.1 CERTIFICATION

I hereby certify that, pursuant to Local Rule 7.1, I have conferred with counsel for Plaintiff and Co-Defendant in an effort to resolve the matters presented herein.

*/s/ Thomas E. Kanwit*
Thomas E. Kanwit

Dated: October 3, 2022    Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Date: October 3, 2022

*/s/ Thomas E. Kanwit*
Thomas E. Kanwit
Assistant United States Attorney