UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KENNETH MEADOR, as the Personal Representative of the Estate of PAULA MEADOR, and THOMAS MEADOR,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 22-cv-40024-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                           **June 28, 2023**

**I.      Introduction**

Plaintiffs Kenneth Meador ("Kenneth"), as the personal representative of the estate of Paula Meador ("Paula"), and Thomas Meador ("Thomas") (collectively, "Plaintiffs") have filed this lawsuit against the United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), for wrongful death (Count I) and loss of consortium (Count II) resulting from the alleged medical negligence of a United States employee.  D. 1.  The United States now moves for partial summary judgment on its defense that it is covered by the Massachusetts charitable corporation tort cap statute, Mass. Gen. L. c. 231 § 85K.  D. 21.  For the reasons stated below, the Court ALLOWS the government's motion.

**II.     Standard of Review**

A court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "An issue is genuine if 'it may reasonably be resolved in favor of either

1

party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citation omitted). The movant "bears the burden of demonstrating the absence of a genuine issue of material fact." Rosciti v. Ins. Co. of Pa., 659 F.3d 92, 96 (1st Cir. 2011) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). If the movant meets its burden, the nonmovant "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010).

### III. Factual Background

The following facts are undisputed and are drawn from the complaint, D. 1, Plaintiffs' statement of material facts, D. 27, the government's memorandum of law in support of its motion for summary judgment, D. 22, and accompanying documents.[1]

Since at least 2012, Paula was a patient at Greater Gardner Community Health Center ("GGCHC"), which is located in Worcester County, Massachusetts. D. 1 ¶¶ 6, 12. GGCHC is a location of Community Health Connection, Inc. ("CHC"), an FTCA-deemed facility within the meaning of 42 U.S.C. § 233(g), headquartered in Fitchburg, Massachusetts. D. 22 at 2. Between March 28, 2016 and March 16, 2019, Paula's primary care physician at CHC, Dr. Kim Houde ("Dr. Houde"), prescribed her lithium carbonate to treat her bipolar disorder. D. 1 ¶¶ 1, 26. On March 16, 2019, Paula's husband, Thomas, found her slumped over and unconscious. Id. ¶¶ 2, 5.

---

[1] The United States did not file a separate statement of material facts to accompany its motion. See D. Mass. L. R. 56.1. While the government's memorandum in support of its motion contains a facts section, this is not sufficient to comply with the rule. United States v. Pfizer, Inc., 188 F. Supp. 3d 122, 128 (D. Mass. 2016). Given that the issue before the Court is one of statutory interpretation, it shall consider the motion on the merits. See Martin v. Tricam Indus., Inc., 379 F. Supp. 3d 105, 108 n.1 (D. Mass. 2019).

Paula was rushed to the hospital and diagnosed with acute lithium toxicity due to elevated levels of lithium in her blood. Id. ¶ 2. She never recovered and died on June 15, 2019. Id.

Plaintiffs allege that but for Dr. Houde's failure to monitor Paula's lithium levels properly, Paula would not have suffered from acute lithium toxicity resulting in her death. Id. ¶ 50. Under federal law, Dr. Houde is immune from suit and the United States has substituted itself as the sole defendant in this case. D. 22 at 2; 42 U.S.C. §§ 233 and 254b. Under Massachusetts law, plaintiffs may not recover more than $100,000 for medical malpractice claims against nonprofit organizations that provide health care. D. 22 at 12–13; Mass. Gen. L. c. 231 § 85K. The government contends that this statute caps any recovery for liability here.

## IV. Procedural History

Plaintiffs commenced this action on March 15, 2022. D. 1. The United States now moves for summary judgment as to its defense that it is covered by the Massachusetts charitable corporation tort cap statute, Mass. Gen. L. c. 231 § 85K. D. 21. The Court heard the parties on the pending motion and took this matter under advisement. D. 33.

## V. Discussion

### A. The United States' Waiver of Sovereign Immunity Under the FTCA

"The FTCA provides a limited congressional waiver of the sovereign immunity of the United States for tortious acts and omissions committed by federal employees acting within the scope of their employment." Soto-Cintron on behalf of A.S.M. v. United States, 901 F.3d 29, 33 (1st Cir. 2018) (citation and internal quotation marks omitted). The government's liability is described under two provisions of the FTCA:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

>                                    \*\*\*
> With respect to any claim under this chapter, the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim, as well as any other defenses to which the United States is entitled.

28 U.S.C. § 2674.  Also, in relevant part:

> the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  "We look to local law to determine whether the government is liable for its agents' allegedly tortious conduct."  Soto-Cintron, 901 F.3d at 33.  As a waiver of the government's sovereign immunity, courts must strictly construe same in favor of the sovereign "with ambiguities construed against waiver."  In re Rivera Torres, 432 F.3d 20, 24 (1st Cir. 2005) (citing Orff v. United States, 545 U.S. 596, 602 (2005)); United States v. Williams, 514 U.S. 527, 531 (1995)).

      **B.**    **The Massachusetts Charitable Tort Cap Statute**

Under Massachusetts law, plaintiffs who bring medical malpractice claims against a "nonprofit organization providing health care" may not recover more than $100,000 "exclusive of interest and costs."  Mass. Gen. L. c. 231 § 85K.  To benefit from this liability cap, an organization must show that it is a charity and that the injury occurred in the course of an activity designed to directly accomplish a charitable purpose, that is, for the benefit of the public good.  Conners v. Ne. Hosp. Corp., 439 Mass. 469, 474, 479–80 (2003) (citations omitted).  It is well-established that "the care and treatment of the sick" is a charitable purpose.  Id. at 474 and cases cited.

4

C.  **Application of the FTCA to the Massachusetts Cap on Medical Malpractice Recoveries**

The issue before the Court is one of statutory interpretation. Whether the Massachusetts recovery cap applies to this case turns upon whether this FTCA suit against the United States, arising from the actions of a doctor employed at an FTCA-deemed facility within the meaning of 42 U.S.C. § 233(g), is a suit against "a nonprofit organization providing health care" within the meaning of the recovery cap statute, Mass. Gen. L. c. 231 § 85K.

The United States, citing Section 1346(b), argues that the liability cap applies because the government's role as a substituted defendant is analogous to that of a private employer, in this case a private hospital, under a theory of *respondeat superior*. D. 22 at 1; see 28 U.S.C. § 1346(b) (providing for exclusive jurisdiction in federal district courts for "civil actions on claims against the United States . . . for injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable"). Plaintiffs argue that the government's position is inconsistent with the text of Section 2674, which provides, in part, that "the United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances." D. 30 at 13–17.

If the terms "private person" in Section 1346(b) and "private individual" in Section 2674 include employers, as the government argues, then the liability cap would apply because "under like circumstances," the private employer analogous to a government hospital is CHC, a private hospital and a non-profit organization covered by Massachusetts' statutory cap. See 28 U.S.C. § 1346; 28 U.S.C. § 2674; Mass. Gen. L. c. 231 § 85K. On the other hand, if these terms include only natural persons, as Plaintiffs argue, then the liability cap would not apply because the United

5

States would be stepping into the shoes of Dr. Houde, who is not covered by the cap. See Mass. Gen. L. c. 231 § 85K (providing that the cap only applies to nonprofit organizations).

The Court agrees with the United States that the text of the FTCA best supports the interpretation that it has stepped into the shoes of a private employer. The language of Section 1346(b) is plainly "couched in the language of an employer's *respondeat superior* liability, creating jurisdiction over actions 'against the United States . . . for injury . . . caused by the . . . wrongful act . . . of any employee . . . while acting within the scope of his office or employment.'" Haceesa v. United States, 309 F.3d 722, 728 (10th Cir. 2002) (omissions in original) (quoting 28 U.S.C. § 1346(b)); see Lomando v. United States, 667 F.3d 363, 374 (3d Cir. 2011) (noting that the text of the FTCA "shadows precisely the common law of *respondeat superior* liability") (citations omitted).

The legislative history of the Federal Employees Liability Reform and Tort Compensation Act of 1988 also supports this interpretation, as "Congress found that '[t]he United States, through the [FTCA], is responsible to injured persons for the common law torts of its employees in the same manner in which the common law historically has recognized the responsibility of an employer for torts committed by its employees within the scope of their employment.'" Haceesa, 309 F.3d at 728–29 (first alteration in original) (quoting § 2(b), 102 Stat. 4564, 28 U.S.C. § 2671 note) (second citation omitted).

Plaintiffs, pointing to the disparate uses of "person" and "individual" in Sections 1346(b) and 2674, respectively, urge the Court to take the view that Section 1346(b) is merely a jurisdictional grant, whereas Section 2674 is what establishes the extent of the government's liability. D. 30 at 24. In Plaintiffs' view, when Sections 1346(b) and 2674 "are analyzed

6

separately, with proper attention paid to the different language used in each statute," the proper interpretation of the term private individual referenced in Section 2674 is a natural person.  Id.

Several circuit courts, however, have not read the phrase "private individual" in Section 2674 to exclude analogies of the United States to private employers.  See, e.g., Haceesa, 309 F.3d at 728–29 (stating that "the only shoes that the Government stands in under the FTCA are those of private employers" and concluding that New Mexico's statutory cap on medical malpractice damages applied to the government); Lomando, 667 F.3d at 374, 378 (noting that the government stood in the shoes of a similarly-placed private employer of physicians and concluding that New Jersey's charitable immunity statute precluded recovery on medical malpractice claim); LaBarge v. Mariposa Cnty., 798 F.2d 364, 367 (9th Cir. 1986) (stating that "the statutory language of [Section 2674] refers not to private persons under 'the same circumstances,' but to those under *similar* circumstances" and concluding that "the United States should be entitled to the same immunity from suit enjoyed by a private employer covered by [Alaska's] workmen's compensation laws") (emphasis in original) (citations omitted).  The Supreme Court has also observed that "[g]enerally, [FTCA] cases unfold much as cases do against other employers who concede *respondeat superior* liability."  Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 420 (1995).

Plaintiffs correctly note that the Eighth Circuit adopted the contrary approach in Knowles v. United States, 91 F.3d 1147, 1150 (8th Cir. 1996), holding in a split decision that the United States was liable to the extent an immunized employee would be under local law.  Several courts, however, have rejected Knowles.  See, e.g., Haceesa, 309 F.3d at 729; Purbaugh by Purbaugh v. United States, No. 2:04CV1381, 2007 WL 9813294, at *3–4 (W.D. Pa. Sept. 14, 2007); Bryant v. United States, 126 F. Supp. 2d 1227, 1233–1234 (D. Ariz. 2000); see also Cocco v. United States

7

and Lawrence Gen. Hosp., No. 21-cv-10800-PBS, D. 49 (D. Mass. Mar. 21, 2023) at 3 (acknowledging Knowles but "hold[ing] that the United States gets the benefit of the charitable camp under M.G.L. ch. 231, § 85K"); D. 37-1.[2]

In light of the analysis above and the approach adopted by the several circuit courts discussed above, the Court concludes that the United States has stepped into the shoes of a private employer and that "the United States gets the benefit of" the Massachusetts charitable cap under Mass. Gen. L. c. 231, § 85K here.

## VI.  Conclusion

For the foregoing reasons, the Court ALLOWS the United States' motion for partial summary judgment, D. 21.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[2] The Court recognizes that shortly after the FTCA was enacted, a district court determined that "[i]t would be illogical to read back into the [FTCA] an immunity which has been granted to local charities." Tessier v. United States, 164 F. Supp. 779, 779 (D. Mass. 1958), aff'd, 269 F.2d 305 (1st Cir. 1959).  The court in Tessier, however, did not have the benefit of later cases including the First Circuit's decision in Reilly v. United States, 863 F.2d 149 (1st Cir. 1988).  In Reilly, the First Circuit examined whether the federal government could avail itself of a Rhode Island statute which permitted health care providers to offset damages awards by amounts paid to plaintiffs from federal or partly federal programs in a medical malpractice case brought under the FTCA.  Id. at 161–62.  The First Circuit concluded that "the federal sovereign may avail itself of the [Rhode Island statute] to the same extent as could a hospital or other similarly-situated health-care provider in kindred circumstances." Id. at 162.