UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KENNETH MEADOR and THOMAS MEADOR, <br><br> Plaintiffs <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No. 22-cv-40024-DJC |

MEMORANDUM AND ORDER

**CASPER, J.**                                                                                   February 13, 2024

I.  **Introduction**

Plaintiffs Kenneth Meador and Thomas Meador (the "Meadors") have filed this lawsuit against Defendant the United States of America (the "U.S.") alleging wrongful death and loss of consortium. D. 1. The Meadors now have moved for injunctive relief against interested party United Health Group, LLC ("United"), seeking an order from the Court that United's lien on any proceeds from this action is invalid. D. 55. The Meadors have also moved to amend their complaint to add two new defendants, United and Jennifer Favazza ("Favazza"). D. 54. For the reasons stated below, the Court ALLOWS the motion to amend and the motion for injunctive relief.

1

II.     **Standard of Review**

    A.     <u>**Motion to Amend**</u>

"[W]hen justice so requires," leave to amend pleadings should be "freely give[n]." Fed. R. Civ. P. 15(a)(2). Courts, however, retain considerable discretion in deciding whether to allow or deny leave to amend. <u>U.S. ex rel. Gagne v. City of Worcester</u>, 565 F.3d 40, 48 (1st Cir. 2009) (citation omitted). That discretion, however, allows courts to deny leave for reasons such as "undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment." <u>Id.</u> (citations omitted).

    B.     <u>**Motion for Injunctive Relief**</u>

Injunctive relief "is an 'extraordinary and drastic remedy.'" <u>Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.</u>, 645 F.3d 26, 32 (1st Cir. 2011) (quoting <u>Munaf v. Geren</u>, 553 U.S. 674, 689-90 (2008)). To obtain such relief, the Court must consider: (1) the movant's likelihood of success on the merits; (2) the likelihood of the movant suffering irreparable harm; (3) the balance of equities between the parties; and (4) whether granting the injunction is in the public interest. <u>Corp. Techs., Inc. v. Harnett</u>, 731 F.3d 6, 9 (1st Cir. 2013). A plaintiff "bears the burden of establishing that these four factors weigh in its favor." <u>Esso Standard Oil Co. v. Monroig-Zayas</u>, 445 F.3d 13, 18 (1st Cir. 2006) (citation omitted).

III.    **Background**

    A.     <u>**Factual Background**</u>

As alleged, Paula Meador ("Ms. Meador") received treatment from Dr. Kim Houde ("Dr. Houde"), an employee of the United States, for her bipolar disorder. D. 1 ¶ 1. Dr. Houde prescribed lithium carbonate to treat Ms. Meador. <u>Id.</u> After falling unconscious, Ms. Meador was diagnosed with acute lithium toxicity due to the elevated levels of lithium in her blood. <u>Id.</u> ¶ 2. Ms. Meador never recovered and died on June 15, 2019. <u>Id.</u>

2

      *1.*  *Factual Allegations Related to the Motion to Amend*

  The Meadors claim that prior to filing this action, counsel requested Ms. Meador's medical records from healthcare entities, including the clinic employing Dr. Houde and also United.  D. 56 (Attorney Reich Aff.) ¶ 1.  The Meadors received medical records from Dr. Houde's office, which included an affidavit certifying to its completeness, id. ¶ 2, but the records they received from United did not include medical records from home health nurse visits.  Id. ¶ 3.

  On July 27, 2022, in its initial disclosure, the U.S. identified a "Jennifer Famzza, NP" (later revealed to be a misspelling of "Jennifer Favazza, NP") as a potentially relevant witness, but did not identify her employer, address, or relevant information in her possession.  Id. ¶ 4.  On September 7, 2022, the Meadors served the U.S. with a request for production, seeking documents concerning Favazza, including documents identifying her employer.  Id. ¶ 5.  The U.S. declined to produce the documents at that time, citing the Court's stay on merits discovery.  Id. ¶ 7.  On February 8, 2023, the U.S. sent the Meadors a document relating to Favazza, id. ¶ 8, noting that the U.S. had inadvertently misspelled Favazza's name in its initial disclosure.  Id. ¶ 9.

  The document revealed that Favazza was part of a program called HouseCalls through United.  Id.  After comparing Favazza's report following her home visit with Ms. Meador on February 26, 2019, D. 56-1, with Dr. Houde's notes from Ms. Meador's office visit a day later, on February 27, 2019, D. 56-2, the Meadors suggests that Dr. Houde had been in possession of Favazza's report and had relied upon its content during her treatment of Ms. Meador during the office visit.  D. 56 ¶ 10.  The Meadors note that they were aware that United nurses had on occasion visited Ms. Meador's house, but were not previously aware of a causal link between those visits and recommendations and Dr. Houde's treatment.  Id. ¶ 11.  The proposed amended complaint asserts wrongful death and loss of consortium claims against United (Counts V-VI) and Favazza (Counts III-IV) as it does still against the U.S. (Counts I-II).  D. 54-1.

2.     *Factual Allegations Related to the Motion for Injunctive Relief*

Ms. Meador received Medicare benefits through United's AARP Medicare Advantage Plan. D. 68 at 2. As a Medicare Advantage Organization ("MAO"), United paid Ms. Meador's medical expenses from the time of her diagnosis of acute lithium toxicity on March 6, 2019 through the time of her death on June 15, 2019. Id. On February 8, 2023, Optum, a subrogation agent acting on behalf of United, asserted a lien here for the purposes of reimbursing United for the medical expenses for the treatment of the injuries Ms. Meador sustained on March 6, 2019. D. 58 at 2; D. 68 at 2; 68-2. The Meadors now challenge that lien in their motion for injunctive relief. D. 55.

IV.    **Procedural History**

The Meadors initiated this action on March 15, 2022. D. 1. The U.S. filed a motion for partial summary judgment on the limited issue of the applicability of the Massachusetts charitable liability cap, D. 21, which the Court allowed. D. 40. The Meadors have now moved to amend the complaint, D. 54, and to enjoin United from asserting a lien on the proceeds of this action. D. 55. The Court heard the parties on the pending motions and took these matters under advisement. D. 74.

V.     **Discussion**

A.     **Motion to Amend Complaint**

The Meadors seek to amend the complaint to add United and Favazza as defendants. D. 54. In considering this motion to amend, the Court turns to United and Favazza's contention that it should not be allowed on the bases of undue delay, undue prejudice and futility. D. 67 at 4, 7, 9.

1.     *Undue Delay*

United and Favazza argue that the Meadors' delay in bringing their motion to amend is not justified. D. 67 at 4. "[U]ndue delay, on its own, may be enough to justify denying a motion for

leave to amend." Hagerty ex rel. United States v. Cyberonics, Inc., 844 F.3d 26, 34 (1st Cir. 2016). "[W]hen considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has [at the very least] the burden of showing some valid reason for his neglect and delay." Pérez v. Hosp. Damas, Inc., 769 F.3d 800, 802 (1st Cir. 2014) (second alteration in original) (citation and internal quotation marks omitted). At the same time, however, "[t]here is no delay that is per se undue" and a "district court mulling a motion to amend in a particular case must consider any alleged delay with that case's specific history in mind." Sheet Metal Workers Loc. No. 20 Welfare & Ben. Fund v. CVS Pharm., Inc., 305 F. Supp. 3d 337, 343 (D.R.I. 2018) (internal citation omitted). "In assessing whether a movant has carried this burden, courts must take into account '[w]hat the plaintiff knew or should have known and what he did or should have done.'" Hagerty, 844 F.3d at 34 (alteration in original) (internal citation omitted).

Here, the motion to amend, D. 54, comes seventeen months after the complaint was filed on March 15, 2022, D. 1. This is not an insignificant period of time. See Zullo v. Lombardo (In Re Lombardo), 755 F.3d 1, 3 (1st Cir. 2014) (discussing cases that have found considerable delay "warranting explanation" where the time elapsed between the filing of the complaint and the motion to amend ranged from fourteen, fifteen and seventeen months). When considering the length of this delay, the Court must do so in the context of this case and concludes here that the Meadors' delay is justifiable. As the Meadors note, this Court bifurcated the case into two phases: 1) addressing the limited issue of the applicability of the Massachusetts charitable liability cap and 2) proceeding with the merits of the case. See D. 19; D. 41; D. 47. The Meadors assert that because the Court stayed discovery on the merits until the resolution of the liability cap issue, they could not obtain further information from the U.S. about Favazza or her employer until February 2023. D. 72 at 3; D. 56 ¶¶ 6-7; see O'Leary v. N.H. Boring Inc., 323 F.R.D. 122, 125 (D. Mass.

2018) (concluding that "it would have been impractical if not impossible" for plaintiffs to move to amend by the court's deadline because the "court effectively stayed discovery until after its resolution of the motion to dismiss, which in turn delayed the exchange of discovery potentially informing on the appropriateness or not of seeking leave to amend"). The Meadors assert that because United never responded to their pre-discovery request for release of all of Ms. Meador's medical records, D. 73-1, despite follow ups requesting same, D. 73 (Reply Reich Aff.) ¶¶ 1-3, the Meadors had no means of knowing the details of Favazza's visits or identifying United as her employer. D. 72 at 2.

United and Favazza argue that the Meadors knew that Ms. Meador was enrolled in United's HouseCalls program and that nurses from United visited Ms. Meador at home, so "Plaintiffs should have known that the document production was incomplete and taken steps to obtain the records from home visits by nurses." D. 67 at 6. The request for release of medical records that the Meadors sent United, however, requested release of all health information including "information relating to medical, pharmacy, dental, vision, mental health, substance abuse, HIV/AIDS, psychotherapy, reproductive, communicable disease and health care program information." D. 73-1. Such request encompasses the HouseCalls program, and given that the Meadors followed up on the request, the Meadors made reasonable efforts to obtain the information. See Perry v. Rose, No. 10-10769-JGD, 2012 WL 3903475, at *5 (D. Mass. Sept. 6, 2012) (finding no undue delay where the plaintiff did not know the identity of the newly named defendants "until they were identified in reports which were not produced, despite earlier requests").

United and Favazza also contend that despite being on notice of Favazza's identity following the U.S.'s initial disclosure, the Meadors waited another year to move to amend their complaint. D. 67 at 5. Given the misspelling of Favazza's name in the initial disclosure, the

Meadors cannot be said to have had notice of Favazza's identity or her connection to United until the U.S. pointed out the spelling error in February 2023. See Viscito v. Nat'l Plan. Corp., No. 3:18-30132-MGM, 2019 WL 7578462, at *5 (D. Mass. July 5, 2019) (allowing motion to amend and rejecting opposition that it should be denied for undue delay where the "sequence of events hardly warrants a conclusion that plaintiff is not diligently pursuing this litigation" (internal citation and quotation marks omitted)); cf. Lukas v. United States, 133 F. Supp 3d 284, 288 (D. Mass. 2015) (denying plaintiff's motion to amend his complaint to add a defendant where plaintiff had been aware of defendant's identify at the time of the accident and failed to move to include him as a defendant until nine months after filing suit and provided no explanation for the delay). United and Favazza observe that the Meadors' counsel, in her declaration, claims that "while [she] cannot be fully sure, [she] does not believe that [she] had previously seen [Favazza's report] or that it was included in anything previously produced to the Plaintiffs." D. 67 at 5 (citing D. 56 ¶ 8). United and Favazza argue that counsel's lack of certainty suggests a lack of due diligence in reviewing the documents produced. Id. Because it is possible that the Meadors never received Favazza's report, the Court will not assume lack of care taken by the Meadors.

Finally, United and Favazza state that the Meadors waited another five months to serve the amended complaint after receiving Favazza's report. D. 67 at 6. United and Favazza suggest that the "impetus for this motion to amend was the Court's June 2023 summary judgment ruling limiting liability of the Unites [sic] States to $100,000 and thereby creating the perceived need to find other defendants to provide [the Meadors] with a recovery opportunity in excess of the limited liability of the United States." Id. Whatever the motivation, the Court concludes that moving to amend the complaint five months after discovering Favazza's and United's involvement is not a considerable or undue delay, especially considering the bifurcated discovery in this case and the

7

fact that the Court had not yet set a schedule for proceeding with the merits of the case. See Amyndas Pharms., S.A. v. Zealand Pharma A/S, 48 F. 4th 18, 37 (1st Cir. 2022) (explaining that "[a]scertaining whether a delay is 'undue' is not simply a matter of counting days but, rather, depends on the 'totality of the circumstances' in the particular case") (internal citation omitted).

        2.      *Undue Prejudice*

United and Favazza also contend that allowing the motion to amend would prejudice them unduly and further delay the proceedings. D. 67 at 9-10. Under Fed. R. Civ. P. 15(a), the Court "may deny an amendment on the grounds of undue prejudice to defendants." Savoy v. White, 139 F.R.D. 265, 269 (D. Mass. 1991). "Most often, this prejudice takes the form of additional, prolonged discovery and a postponement of trial." Klunder v. Brown Univ., 778 F.3d 24, 34 (1st Cir. 2015) (citing cases). United and Favazza argue that because they had no notice of the medical malpractice claims against them in this case, they would be prejudiced by having to defend care that occurred four and a half years ago. D. 67 at 9. United and Favazza, however, had reason to be on notice about the litigation. The Meadors sent a release of health information form for Ms. Meador's records, D. 73-1, and United's subrogation agent shared with Meador's counsel that its software "scrapes" court records to identify cases involving insureds so it can file liens regarding same. D. 73 ¶ 5. Such record is enough to have put United on notice that, having provided medical services to Ms. Meador as part of its HouseCalls program (in which it engaged Favazza), an allegation of liability against them in this action was possible. See Perry, 2012 WL 3903475, at *5 (finding no undue prejudice where the employer of the proposed defendant-employees "has been aware of the plaintiff's claims since well before suit was even filed" and "[t]he only reason that the plaintiff did not know of" the identities of the proposed new defendants "earlier (and within the statute of limitations period) was because the [employer] refused to disclose the information").

8

More significantly, United and Favazza also fail to identify how they would be prejudiced in preparing a defense. They do not assert that any evidence or witnesses are now unavailable nor do they explain how the delay "hindered [their] ability to defend this case." Labrador v. Indus. Contractor's Supplies, Inc., No. 13-13029-MLW, 2015 WL 5737141, at *3 (D. Mass. Sept. 30, 2015). Since the Court has not yet set a further schedule for merits discovery or trial, United and Favazza are not prejudiced in their ability to prepare a defense. See Perry v. Rose, 2012 WL 3903475, at *4-5 (D. Mass. Sept. 6, 2012) (holding that there was no undue prejudice where incident occurred more than five years ago because no trial date had been set and the parties would have "ample opportunity to engage in discovery"); cf. Acosta-Mestre v. Hilton Int'l, 156 F.3d 49, 52 (1st Cir. 1998) (denying motion to amend because amendment would require "a re-opening of discovery with additional costs, a significant postponement of trial, and a likely major alteration in trial strategy and tactics," which would result in prejudice to defendant).

United and Favazza also argue that adding them as parties would delay proceedings because Favazza is entitled to a medical malpractice tribunal pursuant to Mass. Gen. L. c. 231 § 60B. D. 67 at 9. The statute provides that an "action for malpractice shall be heard by said tribunal within fifteen days after the defendant's answer has been filed," Mass. Gen. L. c. 231 § 60B, although "this is not always the case." Joseph v. Sweet, 125 F. Supp. 2d 573, 578 (D. Mass. 2000). Nevertheless, "[a]ny anticipated delays are speculative at this point." Id. Moreover, in the event of any delay, the Court may order discovery to proceed. See id.; see, e.g., Ward v. Schaefer, No. 16-12543-FDS, 2018 WL 1096829, at *4 (D. Mass. Feb. 27, 2018) (noting that the court referred the case to a medical malpractice tribunal, "but did not stay discovery"). Here, where there are multiple defendants, Favazza proceeding with a medical malpractice tribunal is not necessarily a basis for delaying the whole case.

9

       3.      *Futility*

Alternatively, United and Favazza argue that the amendment is futile because the Meadors' claims against them are untimely since the Meadors did not assert the claims against them within the three-year statute of limitations for wrongful death actions. D. 67 at 7. Massachusetts law provides that an action to recover damages for wrongful death must be "commenced within three years from the date of death, or within three years from the date when the deceased's executor or administrator knew, or in the exercise of reasonable diligence, should have known of the factual basis for a cause of action." Mass. Gen. L. c. 229 § 2. United and Favazza argue that the statute of limitations for the wrongful death claim expired either "on March 16, 2022, three years after Ms. Meador's lithium toxicity diagnosis, or at the latest, June 15, 2022, three years after her date of death." D. 67 at 7. The Meadors reply by arguing that their claims relate back to their original complaint, filed on March 15, 2022. D. 72 at 4.

"Where a plaintiff asserts claims against a new defendant beyond the statute of limitations period, such claims are not time-barred if they relate back to the original complaint." Sigros v. Walt Disney World, Co., 190 F. Supp. 2d 165, 168 (D. Mass. 2002) (citation omitted). Rule 15(c)(1)(A), in relevant part, provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the law that provides the applicable statute of limitations allows relation back." Here, Massachusetts law provided the statute of limitations and allows relation back. Sigros, 190 F. Supp. 2d at 168. Under Massachusetts law, "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment (including an amendment changing a party) relates back to the original pleading." Mass. R. Civ. P. 15(c). The claims the Meadors seek to assert against United and Favazza arise out of the same conduct, transaction or occurrence as the claims asserted in the original pleading, namely Ms. Meador's injury and

10

eventual death from lithium toxicity and her health care providers' alleged negligence in monitoring Ms. Meador's blood levels for lithium. See Labrador, 2015 WL 5737141, at *2 (allowing relation back under Massachusetts Rule 15(c) where plaintiff's claims against proposed new party "arise out of the injury alleged in his original [c]omplaint"); Sigros, 190 F. Supp. 2d at 168 (concluding that the tort claims against proposed new party are not time-barred because the claims against it "arise out of the occurrence set forth in the original complaint," namely the accident giving rise to the other tort claims).

To the extent that the amendment is adding a party, courts applying Massachusetts law may consider several factors including: "(1) whether an honest mistake had been made in selecting the proper party; (2) whether joinder of the real party in interest had been requested within a reasonable time after the mistake was discovered; (3) whether joinder is necessary to avoid injustice; and (4) whether joinder would prejudice the nonmoving party." Cayo v. Fitzpatrick, 95 F. Supp. 3d 8, 13-14 (D. Mass. 2015) (internal citations and quotation marks omitted); Palacio v. City of Springfield, 25 F. Supp. 3d 163, 169 (D. Mass. 2014). "These factors are not unlike those applied by the courts to Fed. R. Civ. P. 15(a), namely, undue delay, bad faith, dilatory motive and undue prejudice." Palacio, 25 F. Supp. 3d at 169 (citation omitted).

As previously discussed above in regard to its Fed. R. Civ. P. 15(a) analysis, the Court finds that there was no undue delay or undue prejudice here and that applies for this analysis as to the relation back to the original complaint. Accordingly, the Court concludes that the amendment adding claims against United and Favazza relate back to the original complaint and is timely.

For all of the aforementioned reasons, the Court allows the Meadors' motion to amend, D. 54.

**B.     Motion for Injunctive Relief**

In their motion for injunctive relief, D. 55, the Meadors seek an order from the Court declaring that United's lien on the proceeds of this action is invalid.

    *1.     Likelihood of Success on the Merits*

United argues that the Meadors cannot establish a likelihood of success on the merits because it, as an MAO, may assert a lien on the proceeds of this litigation to recover Medicare payments. D. 68 at 4. The Meadors, however, argue that "[a]lthough Medicare Advantage Organizations have the same recovery rights as Medicare by regulation, Congress created no private cause of action for them to recover against the beneficiaries of malpractice lawsuits." D. 55 at 2.

    a)     Statutory Background

As other courts have done, the Court begins with a brief overview of the Medicare Act to provide the statutory framework at issue in this case. See MSP Recovery Claims, Series LLC v. Plymouth Rock Assurance Corp., 404 F. Supp. 3d 470, 475-77 (D. Mass. 2019); Aetna Life Ins. Co. v. Guerrera, 300 F. Supp. 3d 367, 372-374 (D. Conn. 2018) ("Aetna I"), aff'd sub nom. Aetna Life Ins. Co. v. Big Y Foods, Inc., 52 F.4th 66 (2d Cir. 2022) ("Aetna II").

Enacted in 1965, the Medicare Act consists of five different Parts, Plymouth Rock, 404 F. Supp. 3d at 475; Aetna I, 300 F. Supp. 3d at 372. Parts A and B consist of traditional Medicare, which provides fee-for-service government-administered Medicare, where Centers for Medicare & Medicaid Services ("CMS") directly pays medical providers for services rendered. See 42 U.S.C. §§ 1395c-1395w-6; Aetna I, 300 F. Supp. 3d at 372; Plymouth Rock, 404 F. Supp. 3d at 475. Part C "is the Medicare Advantage Program under which Medicare-eligible persons may elect to have an MAO such as [United], rather than CMS, provide Medicare benefits." Plymouth Rock, 404 F. Supp. 3d at 475 (citing 42 U.S.C. §§ 1395w-21 – 1395w-29).

12

In 1980, Congress amended the Medicare Act to include the Medicare Secondary Payer Act ("MSP"). Aetna I, 300 F. Supp. 3d at 372. Before this amendment, Medicare "paid for all medical treatment within its scope and left private insurers merely to pick up whatever expenses remained." Plymouth Rock, 404 F. Supp. 3d at 475 (quoting Humana Med. Plan, Inc. v. W. Heritage Ins. Co., 832 F.3d 1229, 1234 (11th Cir. 2016)). The MSP "inverted that system; it made private insurers covering the same treatment the 'primary' payers and Medicare the 'secondary' payer." Id. (internal citation and quotation marks omitted). "The MSP provides that Medicare cannot pay medical expenses when 'payment has been made or can reasonably be expected to be made under a workman's compensation law or plan of the United States or State or under an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance.'" Aetna I, 300 F. Supp. 3d at 372 (quoting 42 U.S.C. § 1395y(b)(2)(A)(ii)).

Where Medicare, however, makes a conditional payment on behalf of a primary plan because the primary plan did not make or could not reasonably have been expected to make payment promptly, the primary plan must provide reimbursement. 42 U.S.C. § 1395y(b)(2)(B)(i). To enforce such repayment, the MSP allows "the United States" to "bring an action" and "collect double damages" against any entity that was required to make payment under a primary plan. 42 U.S.C. 1395y(b)(2)(B)(iii); Aetna I, 300 F. Supp. 3d at 373. In 1986, Congress enacted the MSP's private cause of action, which provides "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)." 42 U.S.C. § 1395y(b)(3)(A); Plymouth Rock, 404 F. Supp. 3d at 476. MAOs did not exist when the private cause of action provision was enacted, "and Congress likely therefore did not anticipate such plans bringing actions like that brought here. The more probable scenario then was Medicare beneficiaries or

their healthcare providers suing to recover the costs of services that primary payers declined to cover." Plymouth Rock, 404 F. Supp. 3d at 476 (citation omitted).

In 1997, Congress enacted Part C of the Medicare Act, which "'afford[s] beneficiaries the option to receive their Medicare benefits through private organizations' known as Medicare Advantage Organizations ('MAOs')." Aetna I, 300 F. Supp. 3d at 373 (alteration in original) (quoting Collins v. Wellcare Healthcare Plans, Inc., 73 F. Supp. 3d 653, 659 (E.D. La. 2014)). "Under the Medicare Advantage Program, MAOs administer Medicare benefits pursuant to a contract with CMS, and CMS pays the MAOs a fixed fee per enrollee." Plymouth Rock, 404 F. Supp. 3d at 476. Part C "includes a provision that allows MAOs to charge a primary payer, such as an auto insurance provider that insures a tortfeasor and thereby becomes a primary payer . . . or an individual who has received benefits from such a primary payer." Id.; 42 U.S.C. § 1395w-22(a)(4). "Although this right to 'charge' a primary payer does not itself vest MAOs with a cause of action, CMS regulations provide that an MAO may 'exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under' other regulations addressing, *inter alia*, Medicare's right to recover conditional payments made to service providers from primary payers." Plymouth Rock, 404 F. Supp. 3d at 477. These rights include the right to "recover its payments from any entity, including a beneficiary, provider, supplier, physician, attorney, State agency or private insurer that has received a primary payment," 42 C.F.R. § 411.24(g), the right to "join or intervene in any action related to the events that gave rise to the need for services for which Medicare paid," 42 C.F.R. § 411.26(b), and the right to recover via subrogation from "any individual, provider, supplier, physician, private insurer, State agency, attorney, or any other entity entitled to payment by a primary payer." 42 C.F.R. § 411.26(a).

b) The Meadors Have a Reasonable Likelihood of Success on Defeating United's Lien

The parties do not dispute that the private cause of action provision applies to MAOs as to reimbursement or payments from primary payers. D. 68 at 4; D. 72 at 6-7. See Humana Med. Plan, 832 F.3d at 1236; In re Avandia Mktg., 685 F.3d 353, 367 (3d Cir. 2012); Plymouth Rock, 404 F. Supp. 3d at 480-81. The Meadors, however, are not primary payers, but rather individual beneficiaries of any settlement or damages that may arise from the lawsuit, and argue that the private cause of action provision does not extend to recovery against the beneficiaries of a lawsuit. D. 58 at 2.

Although some courts have come to a different conclusion, this Court is persuaded by the majority of courts that have concluded that MAOs, like United, do not have a private right of action against beneficiaries, their attorneys or other non-primary payers. See Aetna I, 300 F. Supp. 3d at 379 (concluding that the private cause of action provision "permits suits for double damages against primary plans as defined in the MSP, . . . which excludes beneficiaries and their attorneys" and dismissing MAO's claims against beneficiary and her attorneys for recovery of settlement proceeds from primary plan, but allowing claim against primary plan to proceed); Parra v. PacifiCare of Ariz., Inc., 715 F.3d 1146, 1154-55 (9th Cir. 2013) (concluding that because the MAO did not advance a claim against the primary plan "or even against [decedent]'s estate for sums received from a primary plan for medical expenses," the MAO did not establish that it had a private right of action against the survivors and their non-medical related wrongful death claims); MSPA Claims 1, LLC v. Halifax Health, Inc., 295 F. Supp. 3d 1335, 1340 (M.D. Fla. 2018) (holding that "[b]y its terms," the private right of action "only applies to primary plans" and dismissing MAO's claim against entity that received payment from the primary plan); cf. Humana Ins. Co. v. Paris Blank LLP, 187 F. Supp. 3d 676, 681-82 (E.D. Va. 2016) (concluding that MAOs

15

may maintain suit against law firms and attorneys for recovery of conditional payments); MSPA Claims 1, LLC v. Bayfront HMA Med. Ctr., LLC, No. 17-cv-21733, 2018 WL 1400465, at *5 & n.8 (S.D. Fla. Mar. 20, 2018) (concluding that "MAOs, having the same recovery rights as the Secretary, have a right of action to recover from a provider," but acknowledging that another court, Halifax Health Inc., 295 F. Supp. 3d at 1340, had "recently reached the opposite conclusion").

The Court find the reasoning of Aetna I and its progeny more persuasive. See Aetna I, 300 F. Supp. 3d at 379. By its plain language, even considering it in light of the applicable regulations and by comparison to the government cause of action, the MSP allows only for recovery from primary plans. Id. Moreover, the analysis in Paris Blank LLP, 187 F. Supp. 3d at 681-82 and similar cases is less persuasive where its analogy to the government cause of action overstates what could be recovered against beneficiaries and their attorneys where even that provision allows only for the recovery of costs for same and not the double damages that the government could recover from the primary plan. Aetna I, 300 F. Supp. 3d at 381-82 (distinguishing Paris Blank LLP and noting that "to conclude that beneficiaries and their attorneys may be sued under the Private Cause of Action provision would mean that MAOs would not have rights equal to those of the government, but rather rights greater than those of the government, because the Private Cause of Action provision only provides for double damages") (emphasis in original).

Moreover, the Meadors' position that United does not have a viable lien here is perhaps strengthened by the fact that they are not seeking medical expenses. It follows from the statutory language that any recovery from the Meadors would have to be limited to reimbursement of medical expenses paid by United. See 42 U.S.C. § 1395y(b)(3)(A) (allowing recovery for damages "in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)"). As alleged from the beginning of this case, the Meadors are not seeking

damages for medical expenses, see D. 1 at 15; D. 55 at 2; D. 56-3 at 9; D. 54-1 at 27-28. That is, any proceeds resulting from this action would not include reimbursement for medical expenses. See Bradley v. Sebelius, 621 F.3d 1330, 1337, 1339-40 (11th Cir. 2010) (concluding the Secretary was not entitled to any share of the settlement of decedent's children's tort claims, as their claims did not include medical expenses); Denekas v. Shalala, 943 F. Supp. 1073, 1080 (S.D. Iowa 1996) (concluding that "[t]he MSP provisions do not give Medicare the right to obtain reimbursement of conditional payments from the claims of other claimants who are not Medicare beneficiaries and whose claims are not for medical services to the beneficiary").

The amended complaint, like the original complaint, seeks a judgment "in an amount of just compensation for the damages caused by [Defendants' negligence], together with interest, costs and attorneys' fees." D. 54-1 at 32-33; D. 1 at 155. In their initial disclosure, the Meadors noted that they "estimate that there will be no recovery for medical bills incurred for Ms. Meador's final illness." D. 56-2 at 3. Given that the Meadors' claims did not include a claim for medical expenses, United would likely not be able to recover reimbursement of same from any resulting settlement or damages award. See Bradley, 621 F.3d at 1337; Denekas, 943 F. Supp. At 1080; cf. Taransky v. Sec'y of U.S. Dep't of Health & Hum. Servs., 760 F.3d 307, 315 (3d Cir. 2014) (concluding that a beneficiary of a settlement has an obligation to reimburse Medicare where the beneficiary pursued medical expenses as part of her tort suit, and the settlement included compensation for medical costs, released the tortfeasor from claims for medical expenses and provided that reimbursement to the Medicare program would be satisfied and discharged from the settlement proceeds); cf. Anderson v. Burwell, 167 F. Supp. 3d 887, 897 (E.D. Mich. 2016) (explaining that "[i]f a Medicare beneficiary seeks medical expenses as damages in a lawsuit, and

the parties settle the claim, the settlement demonstrates the tortfeasor's responsibility for those medical expenses, regardless of whether the tortfeasor admits liability").

Accordingly, the Meadors have demonstrated a reasonable likelihood of success on the merits of defeating United's lien.

### 2. Likelihood of a Risk of Irreparable Harm

Although "[l]ikelihood of success is the main bearing wall of the four-factor framework," Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996), the likelihood of "irreparable harm is a necessary threshold showing for awarding preliminary injunctive relief," Matos v. Clinton Sch. Dist., 367 F.3d 68, 73 (1st Cir. 2004). To obtain injunctive relief, the Meadors must show a "significant risk of irreparable harm if the injunction is withheld," EEOC v. Astra USA, 94 F.3d 738, 742 (1st Cir. 1996), that "cannot adequately be remedied through money damages alone." Corp. Techs., Inc. v. Harnett, 943 F. Supp. 2d 233, 242 (D. Mass. 2013), aff'd, 731 F.3d 6 (1st Cir. 2013).

The Meadors argue that United's lien will chill settlement negotiations and would lead to no recovery to satisfy the litigation costs incurred given the liability cap in this action. D. 58 at 2-3; D. 72 at 9. In support, the Meadors cite Bradley, where the court reasoned that the Secretary's attempt to recover conditional payments from the loss of parental companionship claims "would have a chilling effect on settlement." Bradley, 621 F.3d at 1339. Although the court in Bradley was not addressing a claim for injunctive relief, courts "have recognized that injunctive relief is appropriate to preserve the relative leverage and negotiating positions of the parties in an ongoing dispute." Axia NetMedia Corp. v. Mass. Tech. Park Corp., 252 F. Supp. 3d 52, 60 (D. Mass. 2017) (collecting cases), aff'd as modified and remanded, 889 F.3d 1 (1st Cir. 2018).

United contends that "medical malpractice cases settle frequently taking into consideration reimbursement of a Medicare lien," so the "mere presence of the lien will not necessarily 'chill'

the prospects of settlement regardless of the lien amount or limited liability of the tortfeasor." D. 68 at 8-9. United, however, does not cite support for this claim and it is unclear whether these referenced settlements occurred in cases involving similar circumstances. In this case, where there is a combination of limited liability and a lien that may exceed this liability cap, the Meadors face a risk of irreparable harm in their ability to engage in meaningful settlement negotiations with Defendants, particularly the U.S.. This particular risk of harm is not strictly a financial one that can be adequately remedied through money damages but one that may impede the prompt resolution of this case. Finally, while "[t]he lien will not be satisfied unless and until a settlement is reached or a judgment is entered in Plaintiff's favor," D. 68 at 8, the harm to the Meadors' ability to engage in settlement negotiations occurs beforehand in the absence of this ruling.

Accordingly, the Meadors have demonstrated a risk of irreparable harm.

        3.      *Balance of Equities and Public Interest*

Neither the Meadors nor United argue the remaining two factors in the test for injunctive relief. The Court, however, finds that the balance of equities and public interest factors weigh in favor of injunctive relief. "Any potential harm caused to [the Meadors] by a denial of [their] motion must be balanced against any reciprocal harm caused to [United] by the imposition of an injunction." TouchPoint Sols., Inc. v. Eastman Kodak Co., 345 F. Supp. 2d 23, 32 (D. Mass. 2004). The harm to United is minimal where it may have a viable claim for reimbursement against a primary payer. See D. 72 at 7; Plymouth Rock, 404 F. Supp. 3d at 480-81; 42 U.S.C. § 1395y(b)(3)(A). The Meadors, on the other hand, would be harmed in their ability to negotiate, thus potentially incurring unnecessary litigation costs.

Injunctive relief is not appropriate unless there is "a fit (or lack of friction) between the injunction and the public interest." Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003) (citation omitted). The public interest is served by ensuring that the Meadors and the

Defendants may resolve their claims, particularly where it appears that United does not have a reasonable basis for its asserted lien.

## VI.     Conclusion

For the foregoing reasons, the Court ALLOWS the Meadors' motion to amend, D. 54, and ALLOWS the Meadors' motion for injunctive relief, D. 55.

**So Ordered.**

/s Denise J. Casper
United States District Judge